UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA OSMUN KENNEDY,<br><br>Defendant. | Case No.  CR08-354-RAJ-JPD<br><br>ORDER DENYING GOVERNMENT'S MOTION FOR MODIFICATION OF CONDITIONS OF PRETRIAL RELEASE |

## I.     INTRODUCTION AND SUMMARY CONCLUSION

The present matter comes before the Court on the Motion of the United States for Modification of Conditions of Pretrial Release. Dkt. No. 15.  The government is seeking to have the Court modify the conditions of Defendant's release to include the additional conditions mandated by the Adam Walsh Act; specifically: (1) electronic monitoring; (2) that Defendant abide by specified restrictions on place of abode; and (3) that Defendant comply with a specified curfew.  *Id.*  Defendant opposes the government's motion, and argues that the Adam Walsh Act's mandatory conditions violate the Excessive Bail Clause of the Eighth Amendment, the Due Process Clause of the Fifth Amendment, and the separation of powers doctrine.  Dkt. Nos. 12, 16.  The government has filed a response to Defendant's opposition,

ORDER
PAGE - 1

Dkt. No. 17, to which Defendant has filed a reply, Dkt. No. 18.  A hearing on the bond modification request was held on November 21, 2008.  Dkt. No. 19.  After careful consideration of the briefs, oral argument of counsel, the governing law, and the balance of the record, the Court finds that the mandatory conditions of the Adam Walsh Act, as applied to Defendant, violate the Excessive Bail Clause of the Eighth Amendment, the Due Process Clause of the Fifth Amendment, and the separation of powers doctrine.  In addition, there are no changed circumstances that warrant imposition of additional terms of supervision.  Accordingly, the government's Motion for Modification of Conditions of Pretrial Release (Dkt. No. 15) is DENIED.

## II.   FACTS AND PROCEDURAL BACKGROUND

On November 9, 2007, upon his re-entry into the United States from travel abroad, Defendant's laptop was examined at Sea-Tac Airport by Customs and Border Patrol Officer Murphy.  Officer Murphy detained the laptop after viewing what appeared to be child pornography, and contacted Immigration and Customs Enforcement ("ICE").  ICE notified Defendant that his laptop was suspected of containing child pornography, and that the government would need to conduct a forensic examination of his laptop.  Defendant's laptop was retained and he was released.

Defendant was aware that a government investigation regarding his laptop and its contents was pending against him over the course of the next 11 months.  During that time, his counsel maintained contact with the United States Attorney's Office.

On October 23, 2008, Defendant was indicted by a federal grand jury on one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2256. Dkt. No. 1.  On October 28, 2008, Defendant surrendered voluntarily to ICE agents and was arraigned the same day before this Court.  The Pretrial Services Report, dated October 28, 2008, recommended that Defendant be released on a personal recognizance bond, with Pretrial Services supervision and particular release conditions, none of which included the mandatory

1   conditions of the Adam Walsh Act.  The government did not seek Defendant's detention, nor
2   did it request that Defendant's release conditions include electronic monitoring, restrictions on
3   his place of abode, a curfew, or restrictions on his ability to possess firearms.  This Court
4   issued an appearance bond that same day which included various release conditions, including:
5   submitting to drug and alcohol testing; undergoing a mental health evaluation; no possession of
6   sexually explicit material; no access to a computer or the internet without permission of
7   Pretrial Services; no frequenting of places primarily used by persons under the age of 18
8   without approval of Pretrial Services; no employment or volunteer activity that causes him to
9   regularly contact persons under the age of 18; and no contact with any person under the age of
10  18 without permission of Pretrial Services.  Dkt. No. 6.  The appearance bond did not include
11  an electronic monitoring condition, imposition of a curfew, or restrictions on possession of
12  firearms.
13      Just over one week later, on November 5, 2008, Defendant was charged in a
14  Superseding Indictment which added one count of transportation of child pornography, in
15  violation of 18 U.S.C. §§ 2252(a)(1), (b)(1) and 2256.  Dkt. No. 7.  The additional charge was
16  based on the allegation that the child pornography was on Defendant's laptop when he arrived
17  from Mexico at the time of its seizure, approximately one year earlier.  Dkt. No. 7.  At the
18  bond modification hearing, the government acknowledged that this new charge was not based
19  on any new evidence, or any post-seizure transmission of the alleged child pornography.
20      The additional charge implicates the mandatory conditions of the Adam Walsh Act.
21  Consequently, on November 14, 2008, the government, after notifying defense counsel of its
22  intentions, filed the instant motion to modify the conditions of Defendant's release to include
23  the additional conditions mandated by the Adam Walsh Act; specifically: (1) electronic
24  monitoring; (2) that Defendant abide by specified restrictions on place of abode; and (3) that
25  Defendant comply with a specified curfew.  Dkt. No. 15.  In connection with the motion, on
26  November 20, 2008, Pretrial Services submitted a supplement to its original Pretrial Services

1  Report, which recommended that Defendant's October 28, 2008 appearance bond be amended
2  to include the statutorily mandated provisions of the Adam Walsh Act; namely, that Defendant:
3  be prohibited from possessing or having access to firearms; "abide by specified restrictions on
4  personal associations, place of abode, or travel," which were not specified apart from the
5  original bond restrictions; abide by a curfew; and comply with an electronic monitoring
6  program. At the bond modification hearing, the Pretrial Services officer confirmed that the
7  sole reason for the additional release conditions in the amended Pretrial Services Report was to
8  comply with the provisions of the Adam Walsh Act. At the hearing, the government asked for
9  the firearms restriction that it mistakenly believed was already in the initial appearance bond.
10 The Pretrial Services officer and the government each stated that they did not have any
11 objections to Defendant's current place of abode. Pretrial Services also confirmed that
12 Defendant has been in full compliance with the terms of the bond issued at his initial
13 appearance.

14    The Defendant is 31 years old and has lived in the Seattle area his entire life, with the
15 exception of 10 months in Vail, Colorado. He has no prior record of criminal activity.
16 Defendant has maintained regular, gainful employment with the local Longshoreman's Union,
17 and he began working with the Union when he was 18 years old.

18    Defendant is very concerned that the mandatory conditions will interfere with his
19 employment, which requires him, on occasion, to travel to other cities along the West Coast.
20 At the hearing, Defendant indicated that he may be required to travel two to three times per
21 month as part of his employment. The Pretrial Services officer stated that Defendant, who has
22 been under supervision for nearly a month, once requested permission to travel to California
23 for a work-related purpose. At the time, Defendant told the Pretrial Services officer that he
24 could avoid attending the function if necessary. Pretrial Services ultimately denied the request
25 because of the short period of time that Defendant had been under supervision. He has not
26 made subsequent requests to leave the jurisdiction. The Pretrial Services officer also

confirmed at the hearing that Defendant would not be able to board an airplane with an electronic monitoring device.

### III.  GOVERNING LAW

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 ("Walsh Act"), Pub. L. No. 109-248, tit. II, 109 Stat. 587, which amended the Bail Reform Act of 1984 ("Bail Reform Act"), 18 U.S.C. § 3142, to require that defendants charged with certain listed crimes be placed on a prescribed minimum set of release conditions. Specifically, 18 U.S.C. § 3142 was amended to require, *inter alia*, electronic monitoring, restrictions on place of abode, a specified curfew, and restrictions on possessing firearms, as conditions of pretrial release for persons charged with certain crimes, including 18 U.S.C. § 2252(a)(1), under which Defendant now stands charged. *See* Dkt. No. 7; 18 U.S.C. § 3142(c)(1)(B). These heightened pretrial release conditions are designed to "protect children from sexual attacks and other violent crimes." Pub. L. No. 109-248, tit. II, 109 Stat. at 611. The applicable portion of Bail Reform Act now reads, in relevant part:

> (c)  Release on conditions.
>
> (1)  If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person—
>
> . . . .
>
> (B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—
>
> . . .
>
> (iv) abide by specified restrictions on personal associations, place of abode, or travel;

ORDER
PAGE - 5

        (v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

        (vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

        (vii) comply with a specified curfew;

        (viii) refrain from possessing a firearm, destructive device, or other dangerous weapon;

        . . . .

In any case that involves a minor victim under section . . . 2252(a)(1) . . . of this title, . . . any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii).

18 U.S.C. § 3142(c)(1)(B).

## IV.    ISSUES PRESENTED

The issues presented to the Court are whether the mandatory pretrial release conditions imposed by the Walsh Act, specifically, (1) electronic monitoring, (2) that Defendant abide by specified restrictions on place of abode, and (3) that Defendant comply with a specified curfew, violate the Excessive Bail Clause of the Eighth Amendment, the Due Process Clause of the Fifth Amendment, and/or the separation of powers doctrine.

## V.    DISCUSSION

### A.    <u>Excessive Bail Clause of the Eighth Amendment</u>

The Excessive Bail Clause applies to conditions of release. *See United States v. Salerno*, 481 U.S. 739, 754 (1987) (holding government's "proposed conditions of release or detention" must not be excessive in light of the perceived evil). To find a violation of the Excessive Bail Clause, the Court must determine that the release conditions are excessive "in light of the perceived evil." *Id.* Bail, as well as conditions of release, must be "reasonably calculated to fulfill" the government's purpose. *See Galen v. County of Los Angeles*, 477 F.3d 652, 659-60 (9th Cir. 2007) (holding that bail may not be set to achieve invalid interests or in

ORDER
PAGE - 6

1   an amount that is excessive in relation to the interests sought to be achieved).  In order to
2   prevail on an Eighth Amendment challenge to release conditions, a defendant must either show
3   that the putative governmental interest is invalid, or that the release conditions are excessive in
4   relation to the governmental interest.
5   　　　At the outset, the Court must first identify the government's interest in imposing the
6   Walsh Act's mandatory conditions.  To do so, the Court first turns to Congress's language in
7   the Walsh Act itself.  The Act states that the government's general interest is in ensuring that
8   minors have additional protection "from sexual attacks and other violent crimes." Pub. L. No.
9   109-248, tit. II, 109 Stat. at 611.  "In the context of the Walsh Act Amendments relating to
10  conditions of release, the government's specific interest is to prevent such crimes and attacks
11  by those arrested and charged with one or more of the listed offenses."  *United States v.*
12  *Gardner*, 523 F. Supp. 2d 1025, 1029 (N.D. Cal. 2007).  It cannot possibly be argued that this
13  interest is not valid or of great importance.  Therefore, the question becomes whether the
14  mandatory conditions legislatively imposed by the Congress are excessive in relation to the
15  government's valid interest.
16  　　　Under the facts of this case, the Court finds that the Walsh Act's mandatory conditions,
17  as set forth in the final undesignated paragraph of 18 U.S.C. § 3142(c)(1)(B), are excessive in
18  relation to the government's interest.  The government and Pretrial Services each acknowledge
19  that, but for the recent Superseding Indictment's added count and the mandatory conditions of
20  the Walsh Act that were implicated thereby, Defendant would continue to be bound by the
21  release conditions specified in his original appearance bond, which did not include electronic
22  monitoring, a curfew, restrictions on abode, or restrictions on possession of firearms.
23  However, there has been no showing that Defendant is any more of a flight risk or threat to the
24  community now than he was at the time of his original appearance bond.  Nothing has changed
25  save the added charge in the Superseding Indictment, and the facts supporting that charge have
26  long been known to the government and Defendant.  Yet at no time previously has the

ORDER
PAGE - 7

government sought to impose the mandatory conditions of the Walsh Act on Defendant.  The government's interest in assuring Defendant's appearance at trial and protecting the community was met by the conditions imposed in Defendant's original appearance bond, and there has been no showing that the government's interest cannot continue to be achieved by the conditions imposed in the appearance bond.

The mandatory conditions sought by the government will severely curtail the Defendant's liberty and could interfere with his present employment.[1]  The conditions mandated by the Walsh Act certainly advance the government's valid interest in protecting children from sexual abuse and exploitation, and therefore are not *per se* violative of the Eighth Amendment's prohibition against excessive bail.  However, the imposition of the mandatory conditions on this Defendant, under these facts, without any showing that the Act's objectives cannot be achieved with the less onerous release conditions already in place, is excessive.  Here, the conditions necessary to achieve the government's objectives of assuring Defendant's appearance at trial and protecting the safety of the community are less stringent than those required by the Walsh Act.  Indeed, the government sought only the less stringent conditions (which are not insignificant) up until the time of the Superseding Indictment.  The Superseding Indictment was not based on any facts that were not known at the time of the original indictment.  The transportation charge was based on the fact of importation of the laptop, which was seized nearly a year prior to the return of the original indictment and the Superseding Indictment.  Accordingly, conditioning Defendant's release on the proposed mandatory conditions of the Walsh Act would subject him to excessive bail in violation the Eighth Amendment.  *See United States v. Crowell*, 2006 U.S. Dist. LEXIS 88489, at *23-25 (W.D.N.Y. Dec. 7, 2006) (holding mandatory release conditions of Walsh Act as applied to be

---

[1] Indeed, Pretrial Services acknowledged at the bond modification hearing that it has already once denied a request from Defendant to travel to a work-related function in California.

ORDER
PAGE - 8

1   violative of Eighth Amendment's Excessive Bail clause); *United States v. Torres*, 566 F. Supp.
2   2d 591, 601 (W.D. Tex. 2008) (same); *United States v. Vujnovich*, 2007 U.S. Dist. LEXIS
3   86020, at *7-8 (D. Kan. Nov. 20, 2007) (adopting *Crowell* without elaboration).

4   The government's attempt to distinguish *Crowell* from the instant case fails.[2]  As the
5   government notes in its brief, in *Crowell* "there were no changed circumstances from the
6   previous bail conditions set by the magistrate judge." Dkt. No. 17 at 8.  As a practical matter,
7   that is the precise situation in this case.  The only thing that has changed since the previous bail
8   conditions were set by this Court is the added charge, and the facts supporting that charge have
9   long been known to the parties.  In other words, as to the traditional issues of concern in a
10  detention hearing, the risk of flight or potential danger to the community, *nothing has changed*.
11  As in *Crowell*, there has been no showing by the government that the prior release conditions
12  in the appearance bond cannot continue to meet the government's objectives.

13  The *Gardner* decision, which held that Walsh Act's electronic monitoring condition did
14  not violate the Excessive Bail Clause, is inapplicable to the case at hand.  In *Gardner*, the court
15  concluded that "the singular addition of electronic monitoring" was not "'excessive' in light of
16  the government's valid interest obtaining an additional safeguard against the risk of post-arrest
17  criminal activity." *Gardner*, 523 F. Supp. 2d at 1031.  However, that ruling is necessarily
18  limited to the unique facts of that case.  Most importantly, unlike the Defendant here, the
19  defendant in *Gardner* was already under curfew as part of the conditions of her supervision
20  when the government moved to amend the pretrial release conditions to include mandatory
21  electronic monitoring.  *Id.* at 1026, 1030.  The curfew was enforced by voice identification
22  monitoring, which required the defendant to answer her home telephone during specified hours
23  to demonstrate compliance with her curfew.  *Id.* at 1030.  Consequently, the court in *Gardner*

---

[2]  While the government addressed *Crowell* in its brief (Dkt. No. 17), the government made no mention of the *Torres* decision, which also addressed the issue at hand and held the mandatory release conditions of Walsh Act to be violative of Eighth Amendment's Excessive Bail Clause, as well as the Fifth Amendment's Due Process Clause.

ORDER
PAGE - 9

noted that the electronic monitoring "merely changes the manner in which her curfew is enforced." *Id.* The court determined that this difference was incremental, and only "slightly more intrusive." *Id.* Here, however, the mandatory conditions being sought by the government will severely restrict the Defendant's liberty and could interfere with his present employment. Unlike the defendant in *Gardner*, the additional release conditions at issue here will exact a significant toll on Defendant's present freedom and will not represent an "incremental" or "slightly more intrusive" restriction on his liberty.

The government also argues that the mandatory release conditions are "not excessive in light of the perceived evil" because they are consistent with other mandatory bail provisions, such as a mandatory three-day detention, see 18 U.S.C. § 3142(f), which arguably constitutes a greater intrusion to an individual's liberty interest than the conditions at issue here. Dkt. No. 17 at 10. However, this argument minimizes the considerable liberty deprivation that accompanies a curfew and electronic monitoring,[3] and ignores the substantial durational disparity between a three-day detention and the up to six-month period from a defendant's release until his or her trial. Moreover, the irony of the government's argument was made plain at the hearing by the revelation that, were Defendant placed on electronic monitoring, he would need to be detained for several days, perhaps over a week, until an approved landline was installed at his home (he presently only has a mobile telephone).

B. <u>Due Process Clause of the Fifth Amendment</u>

"When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (*citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

---

[3] At the bond modification hearing, the Pretrial Services officer stated that if the Defendant were to be placed under a curfew, he would only be permitted to leave his house for his job and to run necessary errands, such as going to the grocery store. All social outings would be required to be preapproved by Pretrial Services.

"For more than a century, the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1864)) (internal quotations omitted). In the present context, the "opportunity to be heard" is protected through an individualized hearing and a particularized finding by a "neutral and detached judge." *See Ward v. Monroeville*, 409 U.S. 57, 61-62 (1972); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970).

Consideration of what process is due in a given set of circumstances "must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by the government action." *Goldberg*, 397 U.S. at 263. Here, the "government function" involved is the congressional mandate, enacted by the Adam Walsh Act Amendments to the Bail Reform Act, that defendants charged with certain crimes not be released before trial absent the imposition of certain conditions, "significantly restricting the defendant's interest, protected by the Eighth Amendment, in remaining at liberty prior to trial." *Crowell*, 2006 U.S. Dist. LEXIS 88489, at *27.

Here, the Court finds that the Walsh Act's mandatory conditions, as applied to Defendant, violate the Due Process Clause of the Fifth Amendment. The Walsh Act, by mandating the imposition of certain burdensome pretrial release conditions in the final undesignated paragraph of 18 U.S.C. § 3142(c)(1)(B), provides that the additional charge in this case, with nothing more, irrebuttably establishes that certain release conditions are required. No meaningful notice is furnished. No individualized hearing is provided. No independent judicial determination is rendered. The imposition of the Walsh Act's "one size fits all" mandatory conditions on Defendant, regardless of his personal characteristics or the circumstances of the new charge, without determining whether such conditions are needed to

ORDER
PAGE - 11

assure the Defendant's future appearance or to avoid a danger to the community, and without any consideration of factors demonstrating that the legitimate objectives of the Walsh Act cannot be achieved with less onerous release conditions, violates Defendant's right to procedural due process under the Fifth Amendment. *See Crowell*, 2006 U.S. Dist. LEXIS 88489, at *35 (holding mandatory release conditions of Walsh Act violate the Due Process Clause of the Fifth Amendment); *Torres*, 566 F. Supp. 2d at 599 (same); *Vujnovich*, 2007 U.S. Dist. LEXIS 86020, at *7-8 (adopting *Crowell* without elaboration). This is particularly true in view of the government's acknowledgment that nothing has changed in the short time since Defendant was released on the appearance bond, save the added charge in the Superseding Indictment, the facts of which have long been known to the government and Defendant.

The government's request for restrictions on Defendant's place of abode illustrates that the motion to modify Defendant's release conditions is brought not because of any individualized risk assessment of Defendant, but solely in response to the mandatory conditions included in the Walsh Act. At the bond modification hearing, both the Pretrial Services officer and the government conceded that they do not have any objections to Defendant's current place of abode. But the government requested in its motion, and Pretrial Services recommended in its amended Pretrial Services Report, that Defendant have restrictions on his place of abode.

The court in *Gardner*, while "troubled by the automaticity of the Adam Walsh Act in imposing certain release conditions without a judicial determination," held that the Walsh Act's electronic monitoring condition did not violate the Due Process Clause on "the facts of the instant case." *Gardner*, 523 F. Supp. 2d at 1032. The court reached this conclusion because "the addition of electronic monitoring represents only a minor change in Ms. Gardner's current regimen of release conditions," and that the Walsh Act only "modifies the manner in which her curfew is being monitored." *Id.* The court found that this incremental restriction in the defendant's life did not implicate a protected liberty interest within the

meaning of the Due Process Clause. *Id.* at 1032-34.  Here, in stark contrast, the mandatory conditions implicate Defendant's liberty interest because they would significantly restrict his present ability to move from one place to another.  *See Torres*, 566 F. Supp. 2d 591, 597 (*citing Williams v. Fears*, 179 U.S. 270, 274 (1900); *Kent v. Dulles*, 357 U.S. 116, 126 (1958)).[4]  While the court in *Gardner* found that the added constraint on the defendant's liberty would only be "incremental," here, the added restrictions on Defendant's liberty would be substantial; from a practical standpoint, but for his job and necessary errands, Defendant would be under home detention.[5]

The government argues that *Crowell*'s reliance on *United States v. Salerno*, 481 U.S. 739 (1987), in holding that the Walsh Act's mandatory conditions violate the Due Process Clause, is misplaced because *Salerno* concerned pretrial detention, and this Court has already determined that Defendant will not be detained while he awaits trial.  Therefore, the government argues, Defendant has already received the due process to which he is entitled and the Due Process Clause is not concerned with pretrial release conditions.  Dkt. No. 17 at 13.  However, while the Walsh Act's release conditions do not require that Defendant be detained

---

[4]  In addition, in its supplemental report, Pretrial Services recommends that Defendant be prohibited from possessing a firearm, which is a mandatory condition under the Walsh Act.  In *District of Columbia v. Heller*, 554 U.S. ___, 128 S. Ct. 2783 (2008), in a 5 to 4 decision, the Supreme Court held that the Second Amendment created an individual right to possess firearms.  If the government's position in this case is sustained, this constitutional right would be taken away not because of a conviction, but because a person was merely charged.  This right would be lost notwithstanding a lack of showing that Defendant is a potentially violent individual, or that he even owns firearms.  Certainly no particularized need has been established in this case that the Defendant should prohibited from possessing a firearm.  In footnote 27, Justice Scalia noted that a law regulating a specific, enumerated right such as the right to keep and bear arms was subject to more than a rational basis level of scrutiny.  *Heller*, 128 S. Ct. at 2818 n.27.

[5]  Moreover, the court in *Gardner* held that *Crowell* was distinguishable because the application of the Walsh Act in *Crowell*, as here, "required the imposition not only of electronic monitoring but also a curfew." *Gardner*, 523 F. Supp. 2d at 1034.  Therefore, the *Gardner* court found that the effect of the Walsh Act in *Crowell* "was significantly more substantial and substantive than in the case at bar." *Id.*

ORDER
PAGE - 13

as such, they will restrict his freedom to such a substantial degree that they do nonetheless implicate a protected liberty interest, see *Torres*, 566 F. Supp. 2d 591, 597 (*citing Williams*, 179 U.S. at 274; *Kent*, 357 U.S. at 126), which may not be revoked without according Defendant procedural due process; specifically, an individualized determination as to whether the onerous mandatory conditions are needed to assure the Defendant's future appearance or to avoid a danger to the community. No such determination has occurred here.

      C.      <u>Separation of Powers</u>

The separation of powers doctrine guards a fundamental principle—namely, that "concentration of power in the hands of a single branch is a threat to liberty." *Clinton v. City of New York*, 524 U.S. 417, 450 (1998). To this end, the doctrine prohibits Congress from encroaching upon the powers conferred to the federal judiciary. *See Kilbourn v. Thompson*, 103 U.S. 168, 191 (1880). In cases involving the Third Branch, the Supreme Court has guarded the separation of powers doctrine by condemning any enactment that "impermissibly threatens the institutional integrity of the Judicial Branch." *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986).

Throughout the years, the United States Supreme Court has identified a number of legislative encroachments which have unconstitutionally transgressed the separation of powers. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995). First, Congress may not prescribe a rule of decision for the judiciary in cases without amending applicable law. *Id.* at 218 (*quoting United States v. Klein*, 80 U.S. 128, 146 (1871)). Second, "Congress cannot vest review of the past decisions of Article III courts in officials of the Executive Branch." *Plaut*, 514 U.S. at 218. Third and finally, Congress may not interfere with the power of the federal judiciary to decide cases by "command[ing] the federal courts to reopen final judgments." *Id.* at 219.

*Crowell* (and *Vujnovich*) held that the Walsh Act's mandatory conditions violate the separation of powers doctrine. *See Crowell*, 2006 U.S. Dist. LEXIS 88489, at *36-38;

ORDER
PAGE - 14

*Vujnovich*, 2007 U.S. Dist. LEXIS 86020, at *7-8 (adopting *Crowell* without elaboration). In *Crowell*, the court found that "the setting of bail in federal criminal cases, with minor exceptions, has been recognized as representing the quintessential exercise of judicial power." *Crowell*, 2006 U.S. Dist. LEXIS 88489, at *37. Accordingly, *Crowell* determined that Congress, by enacting the mandatory conditions of the Walsh Act, had "unambiguously imposed upon the federal judiciary a specific rule to be applied in determining the release of a defendant charged with specified offenses, thereby denying to the court the exercise of its judicial authority to set such conditions." *Id.* By doing so, Congress had "unmistakedly and unduly encroach[ed] upon the judicial function, exclusively reserved by Article III of the Constitution to the Judicial Branch, in violation of the separation of powers established by the Constitution's framework." *Id.* at *38.

The *Gardner* court, on the other hand, found no separation of powers violation. In so concluding, it reasoned that although the right against excessive bail is constitutionally protected, and the enforcement of this right rests primarily with the courts, "Congress has long had a substantial hand in shaping the bail process." *Gardner*, 523 F. Supp. 2d at 1036. The court viewed the Walsh Act as "regulating a field already immersed in legislative prescription," and not substantially altering the fundamental bail-setting function of the federal courts. *Id.*

This Court agrees with the court's reasoning in *Crowell*, and holds that the mandatory conditions of the Walsh Act violate the separation of powers doctrine. While Congress has historically had a hand in shaping the bail process, such as creating a presumption of detention in certain cases, the Walsh Act's mandatory release conditions go much further than that traditional role, and impermissibly intrude upon the judicial function of setting bail in federal criminal cases by requiring conditions that substantially impact liberty interests, and precluding the courts from holding individualized determinations.

ORDER
PAGE - 15

D.	The Proposed Modifications Are Not Necessary and Appropriate.

The government asserts that even if the Court finds the Walsh Act's mandatory conditions unconstitutional, the Court should nonetheless modify the conditions of Defendant's bond to include electronic monitoring, restrictions on place of abode, and compliance with a specified curfew. Dkt. No. 17 at 16. The government argued in its brief and at the hearing that the added charge carries a larger penalty, and that Defendant therefore has a greater incentive to flee to avoid prosecution. *See id.* at 17. Moreover, the government appears to argue in its brief that the added charge, and the evidence supporting that charge, is reflective of Defendant's heightened danger to the community. *Id.* at 17-18.

The Court is not persuaded. The evidence supporting the added charge in the Superseding Indictment has long been known to the parties—the new charge was not based on any new facts, as the government acknowledged at the hearing. Defendant was aware that his laptop was obtained by the government during his re-entry into the United States from a foreign country, and undoubtedly he has long been aware that he could face a charge for transportation of child pornography. The investigation against Defendant was pending for nearly a year, and there is no showing that Defendant has ever attempted to evade prosecution. Moreover, the government does not dispute that Defendant's counsel maintained contact with the United States Attorney's Office during the pendency of the investigation.

Finally, there has been no showing by the government that the threat of potential danger to the community has changed at all since Defendant's original appearance. The Defendant is and remains a life-long citizen of the Seattle area. He has substantial contacts in Seattle. He has no prior criminal history. He remains employed in a well-paying job that he has had for thirteen years. The failure to include the additional conditions sought by the government will not impact the risk of flight.

Accordingly, absent a showing that Defendant is, since his original appearance bond, now an increased flight risk or danger to the community, the Court cannot conclude that the Walsh Act's mandatory conditions are necessary and appropriate.

Accordingly, absent a showing that Defendant is, since his original appearance bond, now an increased flight risk or danger to the community, the Court cannot conclude that the Walsh Act's mandatory conditions are necessary and appropriate.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the mandatory conditions of the Adam Walsh Act, as applied to Defendant, violate the Excessive Bail Clause of the Eighth Amendment, the Due Process Clause of the Fifth Amendment, and the separation of powers doctrine. Accordingly, the government's Motion for Modification of Conditions of Pretrial Release (Dkt. No. 15) is DENIED.

DATED this 25th day of November, 2008.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge